Good morning. If it pleases the Court, my name is Richard Hamlisch. I represent Donald Miller in this matter. In this particular case, there are two or three items which are my personal pet peeves. I will not burden the Court with the sovereign immunity issue and argue that for two or three hours, which I would like to do. I think the main issue in this case centers around what Mr. Chandler talked about in his argument. Ours is a slightly different issue, but it really narrows the whole thing. Section 3041 of the ---- Excuse me, Counsel. Before you do that, I think sort of a crucial issue is the statute of limitations issue. Would you like to address that first? The statute of limitations issue, I don't think there's an issue. Mr. Miller was discharged from custody in 2006, which was a year after ---- How can you say that these claims aren't time-barred? Well, I think the California statutes clearly state that while you were on parole, you're in custody. I think I made that clear in my brief. While you were on parole, you are in custody. It's under California statute. Well, Deutsch v. Hoffman, 211 Cal Reporter, says parolees are not entitled to tolling of the statute. It begins upon release. I'm sorry. What was that site? That was Deutsch v. Hoffman. I'm not familiar with the case, Your Honor. I'll give you the site. 211 Cal Reporter 319, 1985 case. I can't respond to that. I haven't read the case. All right. But I have read the statutes, and I have read the cases which refer to the fact that ---- And I believe the court, the district court, said that there are these statute limitations as to certain parts of this case had not expired. All right. Well, then proceed. I hadn't expected that issue, but ---- Well, let's go back to the issue you do expect, and that's the governor's absolute immunity. Well, Your Honor, in the 2006 case, Simpson v. Nichols, in the 7th Circuit case, states, Only after custody is over may a prisoner use a 1983 to seek damages against persons who may have been responsible for, indeed, the 1983 claim. Indeed, the 1983 claim does not accrue until the custody ends. That's a 7th Circuit case. California Statute 3056 states, Prisoners on parole shall remain under the legal custody of the department and shall be subject at any time to be taken back within the enclosure of the prison. Under California law, the parolee is, in fact, the custody of the Department of Corrections. That's Atlanta v. Fitzharris cited in my brief at page ---- opening brief at page 12. And it's a 9th Circuit 1975 en banc case. All right. Why don't you go to your other issues? The ---- I would like to cite something from the ---- from the ---- the ---- from the brief submitted to the district court in support of a motion to It's at the excerpt of record at page 96. The appellees cite section 3041.1, 31.30, 41.2 of the Penal Code, and article 5, section 8 of the California Constitution. And I read directly from their brief. It says, no decision of any parole authority in this state with respect to the granting, denial, revocation, or suspension of a parole of a person sentenced to an indeterminate term upon conviction of murder shall be effective for 30 days and the government may review, etc. And the conviction of murder, that's what the Constitution of the State of California says. That's what the statutes say. All right. Do you agree that if this were for a conviction of murder, the governor would have absolute immunity? The governor, no, I don't, Your Honor, because I don't think the governor of the State of California has anything to do with, he's the executive of the state, an executive, the executive department of the State of California. When he's exercising the same function as the parole board, when he's reviewing a parole board decision and is limited by the statute to functioning in the same manner as the parole board, he's not acting in the same way as an appellate court would. No, he's acting in the same way as an appellate parole board would. Well, I disagree with the court in that area. He may, not he must. In a court of appeals, when an issue is submitted to this court of appeals, you must review it, one way or the other. Well, if the case goes to the Supreme Court, they may or may not review it when they get a petition for certiorari. That's correct, Your Honor. And there's a case out there from about 150 years ago that says the Supreme Court may not have absolute immunity. Interesting case. There's a little footnote in there, so I'm not going to go with that. The issue of absolute immunity is a very complicated issue. A lot of people would be glad to hear that. In any case, 3041 in these cases don't apply to my client. He was never convicted of murder. Okay, I was trying to get to it step by step. If it were a conviction for murder, why would the governor not have absolute immunity if he performs the identical functions to the parole board? If he did, if the parole board had absolute immunity, then the governor would have absolute immunity if he had authority and jurisdiction under the statutes in the Constitution to do so. In other words, the individual claiming immunity has to in some way, shape or form have some jurisdiction over this case. Okay, but that's because you say this isn't a conviction for murder. Right. Okay, I was trying first to get your view of whether if this were a conviction for murder, whether the governor would have absolute immunity. And I think you're about to say yes, you've come awfully close. The reason I'm hesitating is I have some problems personally with the absolute immunity to almost any. I have problems with absolute immunity too, but it's the law, isn't it? It is the law. I would like to reserve some time for rebuttal. But I have another case pending before this court, which is coming up for oral argument, where a young lady was in prison for 10 years beyond her time. And they say, OK, we have absolute immunity. Can't hear the case. And which is now she's still in prison. You can bring a habeas case. No, no. We got her out on habeas. She's out. She's out on habeas. And now they say our civil case. No, you have no civil case because everybody's immune. Spent 10 years. That's the way it goes. Yeah. Unfortunately, in any case. All right. So we're down to what your real problem is, that you think that if it's a if there is immunity for a review of a murder conviction, you're saying there is not immunity for review of a conspiracy to commit murder. That's correct. It's a different statute he was convicted under. And it's whether it was burglary, whether whatever it was, it was not murder. And the court, the governor makes a mistake in the exercise of his authority to review murder convictions by believing that a conspiracy to commit murder falls within the statute of murder cases. And he has absolute immunity. But he makes a mistake in that exercise. Let me think. He doesn't have the absolute immunity because in addition to being a mistake, he's dealing with a subject that he doesn't have jurisdiction over. The if someone makes a mistake, the police are saying, well, we made a mistake. Tough luck. And I, again, cannot agree with that because many people make mistakes. If I make a mistake, I'm responsible for my mistakes. The governor makes a mistake. He has to take responsibility for making that mistake. Well, judges don't. And that's what's known as judicial immunity. That's right. This is known as quasi judicial immunity, where you don't take responsibility for your mistakes. At least you can vote the governor out of office. You can't vote us out. That's true. But on the other hand, Your Honor, if for what's going on in this courtroom today, you have absolute immunity. On the other hand, if you go through a stoplight as you go across Mission Street, you don't have any immunity. Well, you ought to become a judge or a governor. In any case, that is really where I'm coming from in this case. As I understand the real legal argument, it's that he only has absolute immunity when he's acting with respect to murder cases. That's correct. Now, why doesn't that just fall within the category of his exercising his authority but making an error as to whether this is or is not a murder case? I'm not sure I understand that question, Your Honor. Well, he would have authority if this were a murder case. Yes. Let's assume it is. Yes. And he believes that a conspiracy to commit murder falls within the statute, that that is a murder case. He thinks he has the authority. The California Court of Appeals told him no. He still went ahead and did it again. Well, that's not a good faith belief, maybe, but it's a belief. He may think the California Court of Appeals is wrong. Well, again, Your Honor, I may believe that I don't have to wear a seat belt and I get a traffic ticket for it, and I have a good faith belief that I have a libertarian right not to wear a seat belt, but I'm wrong. I still have to pay the ticket. That's because you don't have immunity. I don't have immunity. And the governor has no immunity in this case because he had no jurisdiction to begin with. You have to get jurisdiction. That's the first step in any ‑‑ this court has no jurisdiction of any case in the district court until that jurisdiction is conferred upon it by filing an appeal or a habeas or whatever kind of action. In this case, the governor has absolutely no jurisdiction. If he takes jurisdiction on a mistaken belief, it doesn't mean he has jurisdiction. If I think something is happening and it's really not happening, it doesn't give me jurisdiction or it doesn't give me the right to do that. The theory of something is done based on a mistake of fact or a mistake of law, and for whatever reason the immunity or whatever other type of relief the person wants, I'm sorry, I just don't view person immunity, especially absolute immunity. Let's assume the governor is not entitled to quasi judicial immunity. Wouldn't he be protected under qualified immunity? Oh, he would be ‑‑ I think we would have to look at the facts and see if he's entitled to qualified immunity. He would be entitled to a hearing on qualified immunity, absolutely, no question about it. But I think that fails because the California Court of Appeals said no, let him out. And even after the California appeals said let him out, he still wanted to keep Mr. Miller in. He still issued another order. So Governor Davis had a policy, no one who has committed murder or anything to do with murder is going to get out of prison for the rest of their lives. That's the policy. And unfortunately the courts stepped on him and said, no, you can't do that. How does this case fit in with the Butts factors? I'm sorry? How does this case fit into the Butts factors, the five Butts factors? I don't see the connection. Again, that fits into the parole board members' issues. I don't see it fitting into the governor's issue because I'm not willing to concede he ever had any immunity, any jurisdiction. And the Butts factors only apply if he has some jurisdiction. So your view is that there's no jurisdiction here with respect to the governor? I mean, the governor had no jurisdiction to do what he did. Absolutely none. Therefore, Butts factors would not apply to him? I don't believe that. The way I read the Butts factors, I don't see that. I would like to take a minute here just to go over and explain to the court why I think that this whole fiction of immunity, absolute immunity, quasi-judicial immunity, is so absurd. The history of parole boards, the governor at one point was the only parole officer in the state of California. Or in common law, there was no parole boards. In the infinite wisdom of the people who decided there should be parole boards, passed statutes of the legislature, and we created parole boards. The governor only had qualified immunity when he was giving out paroles or not giving out paroles or denying paroles 50, 60, 100 years ago. Only qualified immunity. However, when the parole boards came into effect, the courts, in their infinite wisdom, gave them absolute immunity. They said this is quasi-judicial. And now, taking one step forward, we're going to give the governor the same immunity as the parole boards, when originally, before there were parole boards, all he had was qualified immunity. It's absurd. What we're doing here is going around in a circle, where they couldn't get in through the front door, they're going in through the back door. There was no jurisdiction, and there's no jurisdiction for that. The whole history of the parole boards just makes it absurd that this kind of thing would happen. I see my time, I have two and a half minutes left, and I have reserved five, but I'm sure the court... Thank you. Good morning, Your Honors. Rene Lukerik, on behalf of the defendant, Pelley's governor, Gray Davis, Arnold Schwarzenegger, the Youth Authority, and the Board of Prison Terms members. May it please the court, this case concerns two main issues. The first issue is whether or not this action is barred by the statute of limitations, because plaintiff was released from prison in 2002, and he didn't file this action until 2005. And there was no tolling for imprisonment, because he was released from prison. That's the first issue. And under the statute of limitations, under 335.1, there was only a two-year statute of limitations, so plaintiff was required to file by 2004. The second issue is whether or not Governor Davis is entitled to immunity for his decisions to rescind plaintiff's grant of parole in 1999 and 2001. Now, as to the first issue, I think this is a pretty black-and-white issue. I understand plaintiff's position. He talks about that because Mr. Miller was on parole, he was in custody, and therefore he should have some kind of tolling. But none of the cases that plaintiff cites talks about interpreting CCP 35.2, which is the California statute. It's a statute for tolling for the disability of imprisonment. And the two cases I cite, which the court identified, was Deutsch v. Kloffman, and that case talks about how that people on parole don't have the same disability as individuals who are imprisoned, and that's why that tolling doesn't apply to that. And also I believe I cited the case from the Ninth Circuit from City of Elliott v. City of Union City, and that case also stands for the proposition that uninterrupted incarceration is the touchstone of that tolling provision. If we were to agree with you, doesn't that end the case? Yes, it does, Your Honor. That ends the case. Now, so as to the statute of limitations, I'd move on unless the court has any other questions about that. As to the issue of immunity, our position is that Governor Davis performed quasi-judicial functions when he reviewed the parole board's grant of parole and he rescinded that decision. And, again, plaintiff's position is that because Penal Code Section 3041.2 didn't specifically authorize him to, didn't authorize the governor to review decisions where it was a conspiracy to murder as opposed to actual murder, because he made a mistake, he was without jurisdiction. But I think this court hit it kind of on the head when the first question is, would the governor have immunity, quasi-judicial immunity, if the parole board had sent up a decision involving a murderer? And in that case, it should be clear that the governor would have immunity because he would be performing, he would be evaluating the factors of the underlying conviction, looking at the criminality of the individual while he was in prison, and then using his discretion to determine whether or not that's accurate. Now, in this case, he's doing the exact same thing. And the function of the case is that he's immune from liability. But he made an egregious mistake. And why shouldn't he be held liable for that mistake? Well, Your Honor, the case of Anderson v. Boyd speaks to that. And the case of Anderson v. Boyd specifically states that where an individual, a public official, is performing a quasi-judicial function, he's immune from liability even when he makes egregious mistakes of law or fact. And in those situations, it's important to immunize the individual. And the reasons why is, as this Court addressed, the case of Butts v. Economou, there are several factors that have to be considered, whether there is a need to assure that the function can be performed without harassment or intimidation, the first one. And in this case, if Governor Davis was denied immunity just because he had made a mistake of law, then he would have to be, you know, concerned about everyone who's denied parole would sue him and he wouldn't be able to exercise discretion. A mistake of law isn't the problem. The question is whether he has absolute immunity when he's doing something that he's not authorized to do by the statute. The reason he has judicial immunity is because of the statute that gives him the authority to review murder cases. He wouldn't have absolute immunity if he just went out and gave an order to the parole board outside of the statute. And suppose there was clearly no connection with murder and he just sent an order to the parole board, don't parole any more immigrants, legal immigrants, any kind of immigrants, don't do it. He wouldn't be protected by the statute. So counsel's argument is that he's not protected by the statute because this did not occur under the statute. His review of a parole case in a non-murder case, it does not come within the statute that gives him the protection. So it's not an ordinary error. He says it's where there's no jurisdiction to do this. What's your response to that? Well, my response would be that you look at the function that he's doing. And the function that he's doing is the same function that he's doing when he's reviewing it for convicted murders. And in this case, it's not like the plaintiff was ‑‑ it was like a misdemeanor or something. He was convicted of conspiracy to commit murder and he was sentenced to 25 years to life. And that the parole board had been sending the 3041.2 statute authorizes him not for conspirators but for similar type of individuals who even first‑degree ‑‑ second‑degree murderers who are only serving 15 years to life. And so it's not something where it's completely different. You have to look at the statutes taken altogether, 3141.1, 314.2, and 3040. All of them talk about procedures for governing the release of inmates on parole like prisoners. And there's a public policy behind it to make sure that there's some kind of safeguard that dangerous murderers aren't being released. And I believe the reason why he gets immunity is because it's not clearly in the absence of all jurisdiction. It's a close call. He was serving ‑‑ the plaintiff was serving a term of 25 years to life for conspiracy to murder. And it's recognized, apparently it should be clear, that Governor Davis, when he was reviewing the decisions regarding actual murders, that he gets immunity for that. And in this case, reviewing someone who's a conspirator to murder serving 25 years to life, it's not so far removed to say that he acted without any jurisdiction. And that's the test. So courts told him by that time that he had no jurisdiction? I believe plaintiff's analysis of facts is inaccurate. What happened was, according to the complaint, he denied him parole after the BPT granted him parole. He reviewed it in 1999 and 2001 in January and revoked it. Then in August 2001, the Court of Appeal came back and they said, hey, the 1999 decision and the 2001 decision, you don't have authority to do that. And then after that, Governor Davis never came ‑‑ what he did was, when Mr. Miller was subsequently granted parole, he asked the board to review it under 3041.1, but he never rescinded it. And the court order, the Court of Appeal order, it never spoke to 3141.1. It just said under 3041.2 that the governor didn't have the authority back in 1999 and 2001 to revoke those because they dealt only with the statute-only coverage of murder and not conspiracy to murder. After the Court of Appeal's decision, he did not exercise authority under the statute that allows him to review murder convictions? He did not act under 3041.2 according to the allegations in the complaint. He only acted under 3041.1 to ask them. Which allows him to ask the board to reconsider? Allows them, yes, to ask them to reconsider. But he didn't just revoke the decision. So he acted within authority. I want to ask about one of the buts factors. Yes. It says one of the things that would rule against granting quasi-judicial immunity would be that Governor Davis's decision was tainted by political considerations. What is your response to that? Clearly, he was running for office. Right. And I'm not entirely sure what all the timeframes for the different things were. The gentleman that was here before said that Mr. Davis was running for president in 1992, and the parole denials here were from 1999 and 2001. So it's not really clear exactly during what time he's saying that he's running for president. I understand that there's an allegation that he had a blanket policy regarding not approving people. But in this case, I don't think that's true. Governor Davis was always running, but not the president. I see. I apologize for that misunderstanding. Well, my position would be that the parole board, they denied him parole in 1996 and 1998, and they did grant him parole subsequent to that in 1999. So I think it's a fair interpretation to say that someone reviewing that could look at those factors and say, well, maybe the plaintiff hasn't sufficiently rehabilitated himself based on the things that were discussed in 1998. It's not, you know, and so those factors really hadn't changed. But it's an exercise of discretion, looking at the facts and coming to a different conclusion, but still performing, looking at the same set of facts, applying the same type of law that the BPT people did. Her question is whether we should afford absolute judicial immunity to governors, not, you know, Mr. Davis in particular, because they are generally acting in a political manner and subject to political pressures, and therefore they're not the type of officeholder that should receive absolute judicial immunity. I think it was a general question how the buts factors apply to a governor. Okay. All right. I understand. Well, I think you look at the function that he's performing. Regardless of the title that he has, if he's acting like a judge, I believe one of the cases the court referred me to indicates that if he acts like a judge, walks and talks like a judge, he should be entitled to immunity when he's doing that, regardless of what his title is. And the buts factors, they discuss whether or not there's institutional safeguards to prevent improper conduct and whether or not there's an appeal process available. Now, here Mr. Miller was able to use habeas corpus to free himself eventually. You know, he brought habeas corpus, so there was a subsequent system of checks for that. Also, there was an ad – this is an adversarial nature of the process. Mr. Miller was represented by counsel. He had notice of it and a written decision was issued to him. So it's very similar to an adversarial system like we have here, and therefore the function for the governor when he's making these decisions is quasi-judicial in nature because it's similar to the types of functions that judges perform. And, again, he was acting kind of as a court of appeal in reviewing what the Board of Prison Terms did and making his conclusion on that. And I would submit on that unless the Court has any other questions. Thank you, counsel. Thank you, Your Honors. Just to clear up a couple of items that I just found in the brief, the Deutsch case, the California case applying California law to the accrual case in the California court. Federal law governs approval. The state law governs when the statute of limitations is used. So the statute of limitations doesn't start to apply until the case has accrued and federal statutes don't apply state law to accrual. Do you have a case for that? I think I cited the case in my brief. I don't remember it off the top of my head. All right. We'll check your brief. Don't waste your time. I believe it was Simpson v. Nickel, 8th 7th Circuit, 450 Fed 3rd, 3. And Lotta v. Fitzharris, a 9th Circuit, 1975 case, 521 Fed 2nd, 246 to 249. Thank you. It's interesting that the issues that have come up in this case, which I didn't anticipate, if he walks like a judge and he talks like a judge, he's a judge. But if he walks like a politician and he talks like a politician, he's a politician. And that's what Governor Davis was at the time. Mr. Chandler brought that up. I brought it up. That's what's going on here. When it's convenient politically, they allow these parole. When it's during the election year, there's no release of prisoners. But what's interesting in the Miller case is this. He was convicted in 1980 of a murder. I'm sorry. The trial court judge allowed him bail during his appeal of that case. He was out practicing medicine. He's a doctor. He was practicing medicine. The whole appeal to the California Court of Appeals and the California Supreme Court, he was only incarcerated after the appeals failed. That's how dangerous a criminal he was and a threat to society, the trial judge who knew more about it than Governor Davis. You know, there have been a number of cases and a lot of concern about how the parole system has operated in California. That's really a different question from what federal courts can do about it. We have one line of cases under AEDPA, which greatly limits, as the statute does in general, our authority to do anything about habeas corpus these days. Your client and the prior case, both of them, were very lucky to get by and get out ever from the parole system we now have in California. But the idea of suing the parole board or the governor for damages, it's not a question of policy. It's a question of law and what our law is about absolute immunity. That may not be the best remedy for changing what's not a very fair parole system in this state. Suing for damages is not the solution. I would like just one more minute for one more thing. In my brief, you'll notice that I attack the state of California and the parole board on the issue of sovereign immunity. And it's my position that in 1776, the king is dead. George died. And for whatever reason, the courts, from the district courts to the Supreme Court of the United States, resurrected sovereign immunity in 1893 in the Hans v. Louisiana case. And I submit to the court somewhere sometime. That's another case we can't do anything about at the moment. And it may well have been wrongly decided. After reading your concurrence in Beltrans, I would hope that the court would make that same sort of comment in this case about sovereign immunity. Thank you, Your Honor. Thank you, counsel.
judges: Nelson, Reinhardt, Oberdorfer